15695

MAHON v. SPARTANBURG COUNTY

(32 S. E. (2d), 368)

442

*Messrs. Blackwell, Sullivan & Wilson,* of Laurens, S. C., and *Mr. C. Yates Brown,* of Spartanburg, S. C., Counsel for Appellant,

*Mr. H. K. Osborne* and *Mr. Thos. B. Butler,* both of Spartanburg, S. C., Counsel for Respondent,

December 7, 1944.

MR. CHIEF JUSTICE BAKER delivered the unanimous Opinion of the Court:

This is an action for the recovery of damages on account of the death of appellant's intestate, George W. Mahon, who was drowned on February 12, 1943, when he, with a truck which he was driving, and a span of a bridge over

which the truck was being driven, at Van Patton Shoals, went into the Enoree River on the Spartanburg side of the said river.

The action was brought under the statute, the complaint alleging that the death of the deceased was due to the negligence of the respondent in the maintenance of the bridge in the following particulars:

"(a) In that the Defendant, its agents and servants, permitted the support of the end of the bridge above described on the North side of the Spartanburg end to be undermined by the water of the said Enoree River in such a way that the said bridge did not support a normal and customary load carried by the Plaintiff's intestate and others traveling said road;

"(b) In that the said Defendant, its agents and servants, did not post any notice, sign or other warnings to the Plaintiff's intestate and the publice in general of the defective condition of said bridge;

"(c) In that the Defendant, its agents and servants, by its maintenance of said bridge in its defective condition, invited the Plaintiff's intestate and the public generally to use said bridge for the purpose of crossing said River, without properly inspecting and maintaining same, and as a direct and proximate result of this and the other acts of negligence as outlined herein, the Plaintiff's intestate was injured, and from said injuries died;

"(d) In that the Defendant did not have said bridge properly tested by engineers, nor put up a sign or notice of warning to the public generally as to the capacity of said defective bridge and as to the loads which it would support."

And during the trial of the case, appellant was permitted to amend her complaint by alleging an additional specification of negligence reading:

"In that the defendant failed to securely anchor and/or tie together the spans of the bridge on the middle pier to the span on the Laurens County side of said river.

"In that the defendant failed to securely anchor the spans of said bridge to the pier on west end of said span by placing a spiker of sufficient strength to secure the same."

The complaint, of course, alleged that appellant's intestate was free of negligence or contributory negligence.

The answer of the respondent, for a first defense, admitted certain formal matters, and that George W. Mahon (appellant's intestate) was drowned on the date above mentioned in the Enoree River, at the site of its bridge, but denied any liability therefor, and denied all allegations of the complaint not specifically admitted or explained; and for a second defense, pleaded the negligence and contributory negligence of the appellant's intestate in various particulars not necessary to here set out.

At the close of the testimony for the appellant, a motion was made by the respondent for an involuntary nonsuit on the following grounds:

"1. There has been no evidence of any actionable negligence on the part of the County operating as the proximate cause of the accident out of which Mr. Mahon's death arose.

"2. That plaintiff has not affirmatively proved, as required to do under the Statute, that Mr. Mahon did not in any way bring about his injury or death by his own actions or negligence, contributing thereto.

"3. It is provided that if it be claimed that a defect existed before the injury, that no damage can be recovered if the load exceeded the ordinary weight."

The motion was granted, and the appeal is from the order of the trial Judge granting the nonsuit (not from an order directing a verdict as stated in the exception, but which did not mislead the respondent).

It therefore, becomes necessary for us to discuss the testimony on behalf of the appellant, and in so doing we will keep in mind the well-established law that in passing on a motion for an involuntary nonsuit, it is not the Court's function to weigh the testimony, but to determine if there is any relevant and competent testimony reasonably tending to establish the plaintiff's cause of action; and that the testimony must be viewed most favorably to the plaintiff.

Appellant's intestate, George W. Mahon, was an experienced truck driver, having driven trucks for twenty years or more. At the time of his tragic death, he was employed by W. A. Patton of Fountain Inn, S. C., who dealt principally in cotton and fertilizer, and had been working for Mr. Patton for approximately two and one-half years. On the morning of the day of his death (February 12, 1943) appellant's intestate carried thirty bales of cotton to Cannon Mills, N. C., and on his return trip stopped in or went to Roebuck and secured ten tons of fertilizer which he knew was to be delivered to W. P. Cook at Crescent, about five miles below Woodruff. The return load (fertilizer) was being hauled without specific instructions so to do, but in the employer's interest. Upon reaching the place of business of Mr. Cook about 8 o'clock P. M., there was no one there at that time to assist in unloading the fertilizer, so Mr. Mahon drove off, but came back by Mr. Cook's place of business around 9 o'clock, when it was expected that there would be some help there to unload the fertilizer. However, Mr. Cook had then closed his place of business in order to go to his home and listen to a special radio program, and Mr. Mahon then proceeded towards Fountain Inn with the load, choosing the Van Patton's Bridge route, which had its advantages and disadvantages just as the other, and probably more frequently traveled route via Fowler's Bridge. Both bridges spanned the Enoree River, and were in gen-

eral use by the public; and there was no notice of limit of load at the Van Patton's Bridge. This bridge consisted of two steel trusses and two sections of wooden trestles. The steel trusses were supported in the center by a solid concrete pier. On each end they were supported by cylindrical piers, spoken of in the record as pilasters. The floor system was of wood throughout, also wooden handrails were used throughout.

The accident occurred after 9 o'clock in the nighttime, and was not witnessed by anyone. The truck and trailer entirely cleared the wooden trestle, and was on the steel truss on the Spartanburg side of the river when this truss collapsed, resulting in the drowning of appellant's intestate, he being trapped in the cab. The tractor and the trailer were submerged in the water, and it was necessary to drain the Van Patton Shoals Dam in order to remove Mr. Mahon from the cab of the tractor.

No part of the tractor was injured, there being no damage to the fenders and headlights, and the glass of the windshield and in the doors was intact. The left front corner of the trailer portion of the truck was broken and bent downward and forward, indicating to our minds a blow from the top and not from the end, and that therefore the damage thereto occurred when it fell with the bridge.

On the afternoon of February 12, 1943 (the day of the accident), S. E. Thackston and his fourteen-year-old son, Cecil Thackston, were down at the bridge involved for the purpose of moving a boat, and noticed that the dirt from around the pier or pilaster supporting the steel truss on its right-hand side entering from Spartanburg County was badly washed and the pier probably undermined, and to such an extent that Mr. Thackston intended reporting this condition to someone connected with the County, but the accident occurred that night and he made no report of what he had observed. On the morning following the falling of

the bridge, this pier was leaning towards the river, while the left pier was apparently in its same position. There was also testimony from this same witness that there was no notice on the bridge or approaches thereto as to weight limit of loads intended to be driven across this bridge.

While the printed briefs of the appellant and of the respondent discuss the doctrine or *res ipsa loquitur*, the appellant citing *Eickhoff v. Beard-Laney, Inc.*, 199 S. C., 500, 20 S. E. (2d), 153, 141 A. L. R., 1010, and *Gantt v. Columbia Coca-Cola Bottling Co.*, 193 S. C., 51, 7 S. E. (2d), 641, 127 A. L. R., 1185, and the respondent citing *Watson v. Charleston Stevedoring Co.*, 141 S. C., 355, 139 S. E., 778, and *West v. Hillver*, 160 S. C., 541, 159 S. E., 390, we do not think it is necessary for us to make any reference to this doctrine other than to state that the mere proof of the collapsing of the bridge is not of itself sufficient evidence of negligence to warrant sending the case to the jury. But, the appellant introduced circumstantial evidence as hereinabove indicated from which a reasonable inference could be draw that the respondent was negligent in its maintenance of the bridge and that such negligence was the proximate cause of the collapsing of the bridge and the resultant death of appellant's intestate. Until such inference is dispelled by competent evidence, the appellant had made out a *prima facie* case against respondent. As was stated in *Floyd v. Florence Nehi Bottling Co.*, 188 S. C., 98, 104, 198 S. E., 161, 163: "Under the decisions of this court, negligence may be established not only by positive evidence, but by circumstantial evidence as well." Citing authorities. However, this action having been brought under the Statute, Sections 5856 and 5858 of the Code of 1942, it was necessary for the appellant to go further and introduce testimony from which a reasonable inference could be drawn that the appellant's intestate did not in any

way bring about his death by his own act, or in any way negligently contribute to the injury resulting in his death.

As aforestated, the bridge over which appellant's intestate was driving a truck loaded with fertilizer collapsed in the nighttime, and there were no eyewitnesses. So necessarily the appellant was confined to circumstantial and negative evidence. The record shows that the deceased was a truck driver of long experience (twenty years), and was a man who "looked out" for the interest of his employer; that the truck he was driving was in good mechanical repair and equipped with air brakes, hydraulic; that the load on the truck was permitted by law, and was less than that for which the State Highway Department had. issued a license; that there was no evidence of excessive speed, and that the truck had safely passed over the .wooden span of the approach to the bridge proper; that there was no evidence on the truck or trailer that it had come in contact with the bridge, except that the front left side of the trailer was broken and bent down, and as hereinbefore stated, this damage to the trailer could have well occurred in the fall with the bridge. But the respondent contends that a picture of the collapsed bridge shows that the left-hand supporting cord of the bridge, in the direction in which appellant's intestate was proceeding, was snapped completely, at a height approximately level with the body of the trailer. This could just as well have occurred when the tractor and trailer were necessarily thrown against same in the fall of the bridge. The testimony also discloses that when the deceased was at the place of business of the witness, Cook, he talked more than usual, and it appeared "that he could have had a little drink of something"; and that there was evidence of the guardrail on the right-hand side of the wooden approach to the bridge having been skinned and splintered, but there was no evidence of splinters, and the witness refused to testify that it was of fresh origin. This being a much-traveled

highway, it would, of course, smack of conjecture and speculation if the truck driven by the deceased was in contact with the railing of the wooden approach to the bridge, but was a circumstance to be considered by the jury.

Where, as in this case, an injury occurs, resulting in the death of the only person who could account for the cause, we are not going to hold that circumstantial evidence (the next best evidence) cannot be relied upon to establish that the deceased did not in any way bring about the injury, or did not negligently contribute thereto. When such circumstantial evidence is susceptible of more than one reasonable inference, the issue thereabout should be submitted to the fact-finding arm of the Court, the jury.

We have studied this record, including the exhibits, with care, and it being our opinion that there was a scintilla of testimony as defined by that outstanding jurist, the late and lamented Chief Justice Bonham, in writing the opinion of the Court in *Turner v. American Motorists Ins. Co.,* 176 S. C., 260, 180 S. E., 55, both as to negligence on the part of the respondent and that the appellant's intestate did not negligently contribute to the injury resulting in his death, which required these issues, as the record stands, to be submitted to a jury, we are constrained to hold that it was error for the learned trial Judge to have granted respondent's motion for a nonsuit.

Reversed and remanded for a new trial.

Messrs. Associate Justices Fishburne, Stukes and Oxner concur.

Mr. Associate Justice Taylor did not participate.