18269

Annie M. BURGESS, Appellant, v. The LIFE INSURANCE COM-
PANY OF VIRGINIA, Respondent

(138 S. E. (2d) 640)

*Messrs. Murdaugh, Eltzroth & Peters,* of Hampton, *for Appellant,*

*Hugh O. Hanna, Esq.,* of Hampton, *for Respondent,*

October 30, 1964.

LEWIS, Justice.

The plaintiff, as beneficiary, brought this action to recover the sum of One Thousand ($1,000.00) Dollars allegedly due under a policy of insurance issued by the defendant on the life of plaintiff's deceased husband. Upon the trial of the case and at the conclusion of the testimony, both the plaintiff and the defendant made motions for a directed verdict in their favor. The motion of the plaintiff was granted. Subsequently, the defendant moved for a new trial upon the ground that the court erred in directing a verdict for the plaintiff in that the testimony was susceptible of more than one reasonable inference and presented a jury issue. The lower court granted the motion for a new trial upon the foregoing ground; and plaintiff has appealed, claiming that the action of the court in originally directing a verdict in her favor was proper.

The defendant denied liability under the policy in question on the ground that it had lapsed for nonpayment of premiums. The insured died on March 2, 1962. The last weekly premium payment on the policy was made on January 15, 1962. This payment, with the grace period, continued the policy in effect until February 21, 1962, at which time it lapsed for nonpayment of premiums, unless coverage was extended by a credit which the plaintiff contends should be allowed. The plaintiff contends that the insured made an

initial premium payment of $4.72 at the time of the application for the policy, for which he was never given credit. If the insured received credit for this payment, as contended by the defendant, admittedly, the policy had lapsed for nonpayment of premiums. If such credit was not given, then it is conceded this payment would extend the policy coverage beyond the date of the death of the insured. Our inquiry is to determine whether the testimony conclusively shows, as contended by the plaintiff, that such credit had not been given so to require the direction of a verdict in her favor.

The deceased made application for the policy on February 16, 1961. Although the premiums were to be paid on a weekly basis, the defendant required that four weekly payments be made in advance. The deceased paid at the time of the application, as required, the premium for the first four weeks in the amount of $4.72, figured on the basis of a weekly premium of $1.18, and was issued a receipt by the agent of the defendant for such payment. The policy was later issued, effective February 27, 1961, but for a weekly premium of $1.89 instead of the $1.18 as originally contemplated, making a difference due by the insured of $2.84 to cover the premium required for the initial four week period. When the policy was delivered, the agent made entries in the premium receipt book showing that the premiums had been paid for the first four weeks at the higher rate. The premium receipt book shows no separate entry for the payment represented by the application receipt, but simply shows four weekly payments of $1.89 each, or a total of $7.56, as having been made at the time of the delivery of the policy. Both the application receipt and the premium receipt book were placed in evidence by the plaintiff as representing separate payments made by the insured. The agent who handled the transaction with the deceased was no longer employed by the defendant and was not called as a witness.

The plaintiff contends that the receipts conclusively show that the defendant collected from the insured the sum of

$4.72 at the time of the application and an additional sum of $7.56 at the time of the delivery of the policy with no credit given for the initial payment. The plaintiff relied upon the failure of the premium receipt book to specifically show that the entries totaling $7.56 included credit for the prior payment of $4.72, and the further fact that the premium receipt book contained a recital that the four weekly payments of $1.89 each were made on March 3, 1961, the date of the delivery of the policy. The position of the defendant, on the other hand, is that it is reasonably inferable from the record that the insured was given credit for the amount paid with the application by deducting it from the amount due for the higher premium rate, and only paid an additional amount of $2.84 at the time of the delivery of the policy.

Whether or not the trial judge correctly held that he was in error in directing a verdict for the plaintiff must be determined in the light of the well settled rule that if more than one reasonable inference can be drawn from the testimony, or the inferences to be drawn are in doubt, the issues should be submitted to the jury. A case should be submitted to the jury not only when the testimony is conflicting, but likewise when the inferences from it are in doubt, *Odom v. Weathersbee et al.*, 225 S. C. 253, 81 S. E. (2d) 788; *Jackson v. Jackson*, 234 S. C. 291, 108 S. E. (2d) 86.

We think that the trial judge correctly held that the testimony presented an issue of fact as to whether of $4.72. It is true that the plaintiff holds two receipts which the insured was given credit for the initial payment time of the application and four weekly payments, totalling on their face show a payment by the insured of $4.72 at the $7.56, at the time of the delivery of the policy, from which the inference may be drawn that the insured was not given credit for the initial payment. However, it is also inferable that these receipts were issued as a part of the same transaction and represented payments by the insured on the same

52

obligation, to wit: the initial policy premium. As such, they may be properly construed together, in the light of the circumstances surrounding their issuance, for the purpose of determining the issues now before this court.

When the insured accepted the policy based upon a higher premium rate, he held a receipt for prior payment, which he had a right to have credited on the amount then due. Entries were made in the premium receipt book at that time showing that the higher premium had been paid. The receipt book shows that each weekly premium was paid thereafter by the insured through January 15, 1962, a period of over forty weeks. There was no showing that the insured ever made any claim for an overpayment. The same agent who issued the application receipt made the subsequent entries in the premium receipt book and was, therefore, familiar with the fact that the insured was entitled to credit for the prior payment. When the facts and circumstances are tested in the light of common experience in business affairs, it may be reasonably inferred that the insured, upon the acceptance of the policy at the higher premium rate, was given credit for the amount already paid on the obligation, and that the entries in the premium receipt book included such credits. Whether such credit was given, or whether the receipts represented separate and distinct payments by the insured, were factual issues which the trial judge properly concluded must be submitted to the jury for determination.

Affirmed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.