1846

Stewart H. GARRETT, Mary Lou S. Garrett and David H. Garrett, Respondents v. Eldora J. LOCKE, Helen B. Goodjohn, Amie J. Bivens, David V. Johnson, Minnie W. Johnson, Brenda D. Downs, Sam Erskine Johnson, Laura J. Young, Pearlie M. Gary, Calvin B. Johnson, Mrs. Eldon A. Thomas, Della Mae Clark, Brenda Lee McCarroll, Sally D. Johnson, Pearlie M. Johnson, Melvin Douglas Johnson, Billy Johnson and Milford Johnson, Appellants.

(419 S.E. (2d) 842)

Court of Appeals

*Donna Mosley Coleman*, Greenville, *for appellants.*

*Rodney M. Brown*, Fountain Inn, *for respondents.*

Heard May 11, 1992.

Decided July 13, 1992.

*Per Curiam:*

This is an action to quiet title to a tract of real property. Respondents, the Garretts, sued the appellants, (here collec-

tively referred to as the Johnsons), for trespass to their property. The Johnsons counterclaimed alleging ownership of the same property. At the end of the presentation of all the evidence, the trial judge granted the Garretts' motion for a directed verdict. The Johnsons appeal claiming there were issues of fact for the jury to decide. We affirm in part, reverse in part, and remand.

The tract in dispute is shown as tract "C" on the plat attached to this opinion. At one time all of the land shown on the plat was owned by C.J. Jones Sr. In 1953, C.J. Jones Sr. sold the Johnsons a 60.9 acre tract generally located and depicted as tract "B." Later, his son and successor in title, C.J. Jones Jr., sold the Garretts the properties depicted on the plat as tracts "C" and "A" by two separate deeds. The attached plat was prepared for the Garretts after they purchased tract "A" and before they purchased tract "C."

The Garretts allege the Johnsons had for some period of time trespassed upon their property wrongfully asserting title thereto. They asked the court to determine the property line, issue an injunction, and award damages for the trespass. The Johnsons filed an answer in which they denied they had trespassed upon the Garretts' property. They counterclaimed for the award of damages for trespass and for a court determination that they owned the property by adverse possession.

After all the evidence was presented, the Garretts moved for a directed verdict arguing, first, there was no evidence of hostility of possession by the Johnsons and, second, the only reasonable inference to be drawn from the evidence was that tract "C" was owned by them. The trial judge granted the motion for directed verdict finding the only inference to be drawn from the evidence was that the attached plat accurately depicted tract "B" as the property purchased by the Johnsons in 1953. He also found that while there was technically a trespass it was not intentional and he refused to award damages.[1] The judge also found no adverse possession by the Johnsons as they failed to prove the element of hostility.

It is undisputed the Johnsons own at least the 61.5 acres shown as tract "B" and the Garretts own at least the 31.61 acres shown as tract "A." The Johnsons claim tract "C" is a

---

[1] The trial judge made no finding as to who trespassed.

portion of the tract they purchased in 1953 from C.J. Jones Sr. On the other hand, the Garretts contend tract "C" was not included in the Johnsons' 1953 deed but continued to be owned by the C.J. Jones Sr. Estate and subsequently by C.J. Jones Jr. from whom they purchased in 1986.

The Garretts' evidence consisted of the deeds to tracts "A," "B," and "C"; several plats or drawings; the deeds constituting the Johnsons' chain of title; and the testimony of Stewart Garrett, defendant Minnie Johnson Jr., and two land surveyors.

Stewart Garrett testified his family made arrangements in 1982 to purchase all of the land encompassed in both tracts "A" and "C," but decided to wait upon a survey to determine what portion, if any, of the disputed area was owned by the Johnsons. After a survey was done and it was determined by the surveyor that C.J. Jones Jr. owned title to tract "C" they then purchased the tract.

Minnie Johnson Jr. testified his family had lived on the property since 1953. At one time he ran one of the Garretts off the disputed property. He also testified that while his father's deed only called for 60.9 acres of land, the family had claimed the disputed land as a part of their purchase since 1953. The family hired a surveyor in 1979 to survey the property. This surveyor concluded Johnson's father was deeded 73.4 acres by C.J. Jones Sr.

James R. Freeland, a civil engineer and land surveyor, prepared the attached plat for the Garretts. Freeland testified he searched the public records, talked to the Garretts and Johnsons, and physically surveyed the land shown on the plat. Freeland certified the Johnsons owned 61.5 acres of land or tract "B." He concluded from a review of the plat prepared by the Johnsons' surveyor that the plat was inconsistent with the deeds and other plats affecting the property. His conclusions were concurred in by Joseph Montgomery, another civil engineer and surveyor, who surveyed the disputed property in the late 1970's.

On the other hand, the Johnsons presented the testimony of David and Pearlie Mae Johnson and the deposition testimony of their surveyor. David testified he lives on tract "D" as shown on the attached plat. He first became aware of the dispute in 1977 or 1978 when C.J. Jones Jr. raised the issue. He

further testified that from the time his family purchased their property in 1953 until C.J. Jones Sr. died in 1978, his family used tract "C" as their own property. He admitted that when his family hired a surveyor, his father pointed out the property lines to the surveyor because the surveyor was unfamiliar with the land. Pearlie Mae, the wife of Minnie Johnson Sr., testified C.J. Jones Sr. walked her husband around the property before he purchased it in 1953 and pointed out the property lines. She thought their surveyor's plat correctly represented their property.

The Johnsons assign error in the treatment of the title issue by the trail court as one of law. They argue the determination of title to property is a question of fact for the jury to decide. Further, the Johnsons argue the Garretts neglected to establish ownership to the contested parcel by proof of the strength of their own title, but rather sought to prove ownership by weaknesses in the Johnsons' title. Finally, the Johnsons contend the correctness of the Freeland and Montgomery surveys was a question of fact for the jury.

In deciding a motion for directed verdict, the evidence and all reasonable inferences which may be drawn from it must be viewed in a light most favorable to the nonmoving party. *Sub Station II v. Oliver,* — S.C. — 414 S.E. (2d) 141 (1992). If the evidence yields more than one inference, the motion for directed verdict should be denied. *Id.; Bonaparte v. Floyd,* 291 S.C. 427, 354 S.E. (2d) 40 (Ct. App. 1987).

The issue of paramount title is ordinarily a question of fact to be decided by the jury. *Van Every v. Chinquapin Hollow, Inc.,* 265 S.C. 474, 219 S.E. (2d) 909 (1975). In actions to try title, the plaintiff cannot recover on the weakness of the defendant's title but must recover, if at all, on the strength of his own title. *Douglass v. Perry,* 245 S.C. 486, 141 S.E. (2d) 348 (1965).

The rules for determining disputed boundaries are not inflexible but are subject to modification depending upon the particular facts of each case. The vital question is the intent of the grantor at the time the deed is executed. *Klapman v. Hook,* 206 S.C. 51, 32 S.E. (2d) 882 (1945). In locating land, resort is had first to natural boundaries, next to artificial monuments, then to adjacent boundaries, and last to courses and distances. *Fulwood v. Graham,* 30 S.C.L. (1

Rich.) 491 (1845). It is the actual boundary and not the representation of it on the plat that must control. *Atkinson v. Anderson*, 14 S.C.L. (3 McCord) 223 (1825).

Here, the basic question presented is whether the Freeland plat accurately reflects the eastern boundary line. Without this plat, the Garretts did not present undisputed evidence to the exact location of the boundary line. We are not aided by the detailed testimony of the surveyors for much of it cannot be related to the plats.[2]

It is clear from the evidence the Freeland survey was more carefully prepared than the survey prepared for the Johnsons since their surveyor relied to some degree on representations from the Johnsons as to the location of the eastern boundary line. Nevertheless, a determination of the location of the boundary line in dispute depends in large measure on where C.J. Jones Sr. intended the eastern boundary of the Johnsons' property to be when he deeded the property to them in 1953.[3] The Johnsons' evidence created an inference that C.J. Jones Sr. either intended the eastern boundary should be along certain natural or artificial monuments or acquiesced in such monuments being the boundary line. The 1953 deed does not refer to artificial or natural monuments. Nor does it contain courses and distances. It simply states the property is bounded on the east by lands of Mae P. Garrett and lands formerly belonging to W.E. McKnight.[4]

In considering the Garretts' motion for directed verdict, the trial court had no authority to decide credibility issues nor did it have authority to resolve conflicts in the testimony and evidence. See *Mixson v. Rossiter*, 223 S.C. 47, 74 S.E. (2d) 46 (1953) (the determination of whether evidence supports one or the other of conflicting views is for the jury and not for the court). As we view the record, the inferences from the testimony are in doubt. See *Burgess v. Life Ins. Co. of Va.*, 245 S.C. 48, 138 S.E. (2d) 640 (1964) (when the inferences are in doubt the jury should resolve those infer-

---

[2] For example, the surveyors and other witnesses refer to areas and objects on the plats that may have been apparent to the court and maybe the jury but not to us.

[3] If Jones Sr. deeded the property by marking the eastern boundary by artificial and natural monuments such would control and not the acreage.

[4] Presumably, the Garretts mentioned in the 1953 deed are not the same Garretts involved in this lawsuit because they did not obtain title until 1986.

ences). Because there are inferences that C.J. Jones Sr. may have intended to establish the eastern boundary line of the Johnsons' property at a location other than where the Freeland plat places it, we hold there was a jury question regarding the accuracy of the Freeland plat. We, thus, reverse the trial court's grant of the motion for directed verdict.

As to the Johnsons' claim of adverse possession, the trial court in its written order ruled against their position and no appeal has been taken from the trial court's finding that no damages are due either party for trespass.

We, therefore, remand this case to the trial court for a new trial and determination of the ownership of parcel "C" as shown on the attached plat. At the remand hearing, neither party shall be permitted to establish title to the disputed tract by adverse possession nor seek damages for trespass to the other's property.

Affirmed in part, reversed in part, and remanded.

CURETON and GOOLSBY, JJ., and LITTLEJOHN, Acting Judge, concur.

