714 S.E.2d 550

**SOUTH CAROLINA FEDERAL CREDIT UNION, Respondent,**

v.

**Mildred R. HIGGINS and Stivers Automotive of Lexington, Inc., Defendants,**

**of which Stivers Automotive of Lexington, Inc., is Appellant.**

No. 27034.

Supreme Court of South Carolina.

Heard May 4, 2011.

Decided Aug. 29, 2011.

Joseph Gregory Studemeyer, of Columbia, for Appellant.

Robert E. Sumner, IV, and Cynthia J. Lowery, of Moore & Van Allen, PLLC, of Charleston, for Respondent.

Justice KITTREDGE.

This is a direct appeal from the trial court's grant of a directed verdict against Appellant Stivers Automotive of Lexington, Inc., in its contract dispute with Respondent South Carolina Federal Credit Union. We reverse and remand for a new trial.[1]

## I.

Appellant Stivers Automotive of Lexington, Inc. (Stivers) and Respondent South Carolina Federal Credit Union (SCFCU) were parties to a Dealer Agreement (Agreement), under which SCFCU agreed to purchase sales contracts between Stivers and purchasers of its vehicles. Among other provisions in the Agreement, Stivers warranted with respect to its sales contracts assigned to SCFCU:

(5) the Contract is genuine and the statements and amounts inserted therein are correct;

. . . .

(9) the collateral and/or service have been sold, provided and delivered to and accepted by buyer;

. . . .

(16) Dealer has not knowingly communicated to Lender incorrect information relating to the buyer's application or credit statement or knowingly failed to communicate information relating to such application or credit statement;

(17) the facts set forth in the Contract are true;

(18) buyer has no defense or counterclaim to payment of the obligation evidenced by the Contract;

(19) buyer is ... not a minor and has legal capacity to execute this Contract and is liable thereon....

The Agreement also provided that Stivers would be in default "if any warranty, representation or statement made or furnished by or on behalf of [Stivers] in connection with this

---

1. The underlying case involved a claim against Mildred R. Higgins. The original claim by SCFCU against Higgins was dismissed at the conclusion of the evidence and that dismissal is not challenged on appeal. While the retrial will require the remaining parties to litigate the issue of Higgins' capacity as it relates to the Dealer Agreement, Higgins is no longer a party to this case.

Agreement or any Contract purchased by [SCFCU] is false or has been breached in any material respect."

In November 2005, Hiram Riley (Riley) sought to purchase a vehicle from Stivers but was unable to qualify for financing. Stivers' salesman, Tom Roper (Roper), indicated that Riley could get the car if he found a co-signer. Riley contacted his sister, Mildred Higgins (Higgins), who agreed to co-sign for the car. Upon receiving that information from Riley, Roper contacted Higgins to check her credit and prepare the appropriate documents.[2] Roper then visited Higgins at her home in Charleston to sign the appropriate paperwork. After Roper thoroughly explained the documents, Higgins indicated she understood and signed the paperwork. As it turned out, the paperwork was drafted so that Higgins was the sole purchaser of the car, not a co-signer.

Ultimately, SCFCU approved the loan to Higgins for the purchase price. Riley picked up the vehicle, with the understanding that he was to make the payments. Shortly thereafter, Riley drove the vehicle to Charleston, and Higgins told him that she wanted to see "what she signed for." After viewing the car, she and Riley again visited in her home.

After making initial payments, one of Riley's checks bounced.[3] At that point, Riley stopped making payments on the car, stopped driving it, and told SCFCU where it could recover the car. SCFCU hired an agent to repossess the vehicle, which was subsequently sold in July 2006 at an auction.

In December 2006, SCFCU filed a complaint against Higgins, given that her name was on the loan. Higgins denied the allegations in the complaint, stating that she was incompetent at the time of the execution of the contract. Subsequent-

---

**2.** Higgins' credit report reflected that she had good credit, including a home equity line of credit and a credit card, both of which were current.

**3.** In February 2006, SCFCU discovered the vehicle was not insured and included a forced insurance policy on the vehicle, essentially doubling the payments. SCFCU purchased the insurance because Higgins' insurance (which appeared on the sales contract) did not cover Riley. It appears that the addition of the insurance to the monthly payment was more than Riley could afford.

ly, SCFCU amended its complaint, alleging Stivers breached the Agreement.

A jury trial was held in December 2008. At the conclusion of the testimony, the trial court granted SCFCU's motion for a directed verdict against Stivers, finding Higgins lacked capacity to contract and Stivers breached the Agreement in that regard. The trial court's initial order focused solely upon the issue of capacity. In February 2009, the trial court amended its order, affirming its initial order, but adding that Stivers committed "six unequivocal breaches of the contract," including the capacity issue.[4] This appeal followed.

## II.

Stivers raises six issues on appeal.

(1) Did the trial court err by granting a directed verdict motion on the issue of Higgins' capacity?

(2) Did the trial court err by concluding Stivers breached other warranties contained in the Agreement?

(3) Did the trial court err by granting SCFCU's directed verdict motion on the issue of damages?

(4) Did the trial court err by concluding Stivers conducted a "straw purchase" in violation of the Agreement?

(5) Did the trial court abuse its discretion in the amount of attorney's fees it awarded?

(6) Did the trial judge abuse his discretion by not removing himself from the case due to alleged bias?

We dispose of this appeal on the basis of the first three issues and need not reach the remaining issues.

## III.

 When considering a directed verdict motion, the trial court should view the evidence and all reasonable inferences in

---

4. In its initial order, the trial judge referenced his personal experience with family who suffered from dementia. Based on this newly disclosed information, coupled with the trial court's handling of the trial, Stivers moved for the judge's recusal based on alleged bias. The trial court denied the recusal motion. The trial judge also increased the award of attorney's fees in the amended order to an amount he essentially acknowledged was excessive.

the light most favorable to the non-moving party. *Sabb v. South Carolina State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999)). "If more than one reasonable inference can be drawn . . . the case should be submitted to the jury." *Chaney v. Burgess*, 246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965) (citing *Mahon v. Spartanburg County*, 205 S.C. 441, 449, 32 S.E.2d 368, 371 (1944)). The trial court should be "concerned only with the existence or nonexistence of evidence," not its credibility or weight. *Jones v. General Elec. Co.*, 331 S.C. 351, 356, 503 S.E.2d 173, 176 (1998) (citing *Garrett v. Locke*, 309 S.C. 94, 99, 419 S.E.2d 842, 845 (Ct.App.1992)). We view the evidence in a light most favorable to Stivers, as our standard of review requires.

## A.

■ We find that the trial court erred by directing a verdict against Stivers on the issue of capacity.[5] There was sufficient evidence to submit the issue of capacity to the jury. Riley's testimony, if believed, pointed to Higgins' capacity. Riley had contact with his sister, Higgins, including interaction with her shortly after the transaction. Riley's testimony, as well as Roper's, tended to establish that Higgins had capacity to contract. Additionally, the testimony of Higgins' physician was less than conclusive as to whether Higgins was suffering from dementia at the time the sales contract was executed.[6] Moreover, Higgins maintained a valid driver's license and was still driving at the time. She also maintained an open line of

5. We summarily reject as meritless SCFCU's position that Stivers is precluded from challenging the directed verdict because Higgins is not a party on appeal. Rule 220(b)(1), SCACR.

6. The evidence from Dr. Little indicated that in December of 2006, Higgins was "experiencing some decreased memory/secondary to early stage dementia." Although Dr. Little subsequently opined that Higgins' diagnosis was "early stage dementia which began early November 2005," his December 18, 2006, letter concludes that Higgins "is not capable of making business decisions . . . at this time." The medical evidence may not be viewed as expressing a definitive opinion as to Higgins' capacity at the time of the November 2005 transaction.

credit for a home equity loan and a credit card, both of which were current.

The trial court erred by weighing the evidence presented. *Garrett*, 309 S.C. at 99, 419 S.E.2d at 845 (stating that the trial court should not be concerned with the credibility or weight of evidence, only its existence). The trial court stated, "It is not what the car salesman on one brief visit may have thought Higgins' condition was, it is what it actually was based on her doctor's exams and her husband's experience with her that is important." That statement reflects the trial court's favoring of one party's evidence and improper weighing of credibility. There may be a clear basis for the fact-finder to reject the testimony of Riley and Roper, but that credibility determination lies with the jury, not the court at the directed verdict stage. We hold the evidence under the proper standard of review presented a question of fact as to Higgins' capacity.

### B.

■ We additionally hold that the trial court erred in granting a directed verdict to SCFCU as to the other warranties contained in the contract, as well as the amount of damages due SCFCU. As stated above, the trial court's original order held Stivers breached the warranty as to capacity. Following Stivers' motion to reconsider, the trial court expanded upon its initial and sole basis for a directed verdict by adding that Stivers breached other warranties as well, providing only a conclusory discussion and analysis. It is unclear whether the trial court's post-trial attempt to expand the directed verdict grounds was in recognition of the improper grant of a directed verdict based on Higgins' lack of capacity to contract.

We recognize the option to remand the matter for further development of the additional warranty issues. We decline a remand limited to the liability issue because a new trial is warranted on the issue of damages in any event. The vehicle was repossessed only months after the sale. Following repossession of the car by SCFCU, it was sold at auction for approximately $9,700, which was less than fifty percent of its original sale price. We are aware the sale price included the finance charges and a sale at auction would bring less. Stiv-

ers challenged the reasonableness of SCFCU's disposition of the car and presented evidence calling into question the commercial reasonableness of SCFCU's actions. The evidence creates a question of fact on the issue of damages. Because a new trial is warranted and given the circumstances in which a directed verdict was granted on the liability question, we remand for a new trial on liability and damages.[7]

In light of our reversal of the trial court's grant of a directed verdict, we decline to address any remaining issues raised by Stivers.

**REVERSED AND REMANDED.**

TOAL, C.J., and PLEICONES, J., concur.

BEATTY, J., concurring in part and dissenting in part in a separate opinion in which HEARN, J., concurs.

Justice BEATTY.

Having reviewed the facts in the light most favorable to Stivers, I would affirm the trial judge's granting of a directed verdict on the breach of warranty claim; however, I would reverse on the damages issue and remand.

It is undisputed that the collateral was delivered to Riley not Higgins. This violated paragraph (9) of the warranties agreement. Roper knew that he had prepared the documents to reflect Higgins as the buyer although Riley was the true purchaser. This resulted in Higgins being a "straw purchaser," which violated paragraph (9).

It is also undisputed that Roper never informed SCFCU of Riley's involvement in the purchase and that the application for credit was actually for Riley and that Higgins should have been a co-signer. This arguably caused SCFCU to lower its interest rate because Higgins had good credit; it also deprived SCFCU of an opportunity to fairly assess the loan's risk. This failure to disclose material information violated paragraph (16) of the warranties agreement.

---

7. We do not foreclose upon retrial the consideration and grant of a directed verdict, if appropriate.

For the foregoing reasons I would affirm the directed verdict. I concur in the majority's decision to remand the damages issue for further consideration.

HEARN, J., concurs.