731 S.E.2d 727

**Janette HAMILTON, Appellant,**

v.

**CHARLESTON COUNTY SHERIFF'S DEPARTMENT, Respondent.**

**No. 5007.**

Court of Appeals of South Carolina.

Heard June 5, 2012.
Decided July 25, 2012.

Cameron L. Marshall, of Charleston, for Appellant.

Robin L. Jackson, of Senn Legal, LLC, of Charleston, for Respondent.

HUFF, J.

Janette Hamilton appeals the trial court's grant of the Charleston County Sheriff's Department's (the Department) directed verdict motion on Hamilton's negligent supervision claim.

On appeal, Hamilton argues the trial court erred because evidence in the record existed showing the Department was grossly negligent in its supervision of an employee of the Department who assaulted her. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Officer Antonio Aiken, former prison guard for the Department, assaulted Hamilton while she was imprisoned with the Department. Subsequently, Officer Aiken pled guilty to sexual misconduct with an inmate and was sentenced to two years' imprisonment, suspended upon two years' probation.[1] After the assault, Hamilton sued the Department for negligent training and supervision of Officer Aiken.

On June 1, 2009, a jury trial was held. Hamilton testified she was sorting laundry in the break room as usual during the late evening of June 19, 2003, when Officer Aiken came into the break room and began joking with her. Hamilton testified Officer Aiken then required her to perform oral sex on him twice.

At the close of Hamilton's case, the Department moved for a directed verdict on both claims. The trial court granted the Department's directed verdict motion on the negligent training claim, but denied the Department's motion on the negligent supervision claim. After the close of its evidence, the Department again moved for a directed verdict on the negligent supervision claim, and Hamilton also moved for a directed verdict. The trial court granted the Department's motion and denied Hamilton's motion, finding no evidence existed indicating Officer Aiken would commit such crimes and Officer Aiken was clearly acting in his own capacity when he engaged in sexual misconduct with Hamilton. Hamilton filed a motion to amend the judgment or to grant a new trial, which the trial court denied. This appeal followed.

## ISSUE

Did the trial court err in granting the Department's motion for a directed verdict on the negligent supervision claim?

## STANDARD OF REVIEW

In reviewing a directed verdict, the court should consider in favor of the non-moving party whether any evidence existed. *S.C. Fed. Credit Union v. Higgins*, 394 S.C. 189, 193–94, 714 S.E.2d 550, 552 (2011). The court should be

---

1. Officer Aiken also pled guilty to two additional indecent exposure charges; however, these charges did not involve Hamilton.

concerned only with the existence or nonexistence of evidence. *Id.*

An employer can be liable for negligent supervision of an employee when an "employee intentionally harms another" on the employer's premises and "[the employer] (i) knows or has reason to know that he has the ability to control his [employee], and (ii) knows or should know of the necessity and opportunity for exercising such control." *Degenhart v. Knights of Columbus*, 309 S.C. 114, 116–17, 420 S.E.2d 495, 496 (1992) (quoting Restatement (Second) of Torts § 317 (1965)). "[A] governmental entity is not liable for a loss resulting from responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any ... prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." S.C.Code Ann. § 15–78–60(25) (2005). "A defendant is guilty of gross negligence if he is so indifferent to the consequences of his conduct as not to give slight care to what he is doing." *Jackson v. S.C. Dep't of Corrs.*, 301 S.C. 125, 126, 390 S.E.2d 467, 468 (Ct.App.1989).

## LAW/ANALYSIS

Hamilton argues the trial court erred in granting the Department's motion for a directed verdict because abundant evidence existed showing the Department was grossly negligent in its supervision of Officer Aiken. Specifically, Hamilton asserts her expert witness, Dr. George Kirkham, testified that the Department was grossly negligent by failing to employ rape prevention measures, maintain the minimum national security standards, and adopt adequate monitoring policies. Additionally, Hamilton argues the Department failed to adequately investigate Officer Aiken's background prior to employing him.

Dr. Kirkham, a criminologist, testified the Department was grossly negligent because it "was in gross violation of what would have been nationally accepted standards." He explained the Department ignored a foreseeable harm of sexual assaults against inmates by failing to minimize contact of male officers with female inmates, monitor the officers' where-

abouts, and implement adequate supervision mechanisms such as cameras and locked doors.

John Gaillard, a retired lieutenant tour commander with the Department, testified the door leading to the break room also led to the service hallway. Keith Novak, a retired chief deputy with the Department, explained they typically did not lock the door during the day because the service hallway was such a highly trafficked area.

Novak testified the break room had a camera, but explained the camera focused on the busy service hallway and entrance to the break room. Michael Tice, an administrative security lieutenant over the security services at the Department's detention center, testified the camera system met the minimum standards required by the South Carolina Department of Corrections as well as the American Correctional Association standards.

According to Major Willis Beatty, the Department did not have any established policies concerning the interactions of male guards and female inmates at the time of the incident. He also stated that the Department complied with the minimum jail standards that were established by the Department of Corrections at that time. Beatty explained the Department did not have any monitoring system for the officers, and they were able to move around the jail as they desired in order for them to do their jobs. Both Gaillard and Novak testified they trusted Officer Aiken because they had hired him and he had successfully completed the Department's training. Once the training for guards was completed they were no longer routinely supervised. Novak also explained that the Department complied with the jail standards established by the Department of Corrections.

Major Patricia Garrison testified that Officer Aiken was trained on the Department's policies on sexual harassment and appropriate interaction with the inmates. She also stated the Department immediately began investigating the incident when it learned about it in July 2003 and terminated Officer Aiken immediately after the charges were brought against him.

Dana Herron, a human resources employee for the Department, testified she recommended Officer Aiken for employ-

ment after a pre-employment investigation. However, Herron admitted she received a report from the Charleston Police Department ten days after she submitted her recommendation to the Department. There were two reports from the Charleston Police. One report concerned employment as a dispatcher during the summer of 1996 when Officer Aiken was in high school. This report stated the police would "absolutely not" rehire Officer Aiken. At the bottom of this report, the Charleston Police also have a note that Officer Aiken interviewed for a dispatcher position in 2001 and in that note stated that Officer Aiken was "not CPD material-for any position." Another report from the Charleston Police covered employment by Officer Aiken as a clerk and also a position in the control room during the summer of 1998. This report stated that he was a nice young man and "took his job seriously." Herron testified she did not reopen her investigation on Officer Aiken after receiving these additional reports because she did not believe any "red flags" were present in the process. There was no misconduct detailed in either report. Herron explained the Department performed a psychological evaluation on Officer Aiken, which only indicated Officer Aiken had "a proclivity towards being late and absent more than three times in a single year, as well as possibly being terminated prematurely for wrongdoing." Herron testified her investigation showed that Officer Aiken was at a low-risk for performance difficulties.

**CONCLUSION**

Although Dr. Kirkham testified the Department violated nationally accepted standards, the Department provided uncontradicted evidence that it met minimum security standards set for South Carolina. In addition, there is no evidence the Department knew or should have known of the necessity to exercise additional supervision of Officer Aiken to prevent him from harming Hamilton. We find the only inference from the evidence is that the Department exercised at least slight care in its supervision of Officer Aiken. *See Jackson v. S.C. Dep't of Corrs.*, 301 S.C. 125, 126, 390 S.E.2d 467, 468 (Ct.App.1989) (stating to be guilty of gross negligence defendant's conduct must not have given slight care to what he was doing).

Accordingly, the trial court properly granted the Department a directed verdict on Hamilton's negligent supervision claim.

AFFIRMED.

FEW, C.J., concurs.

SHORT, J., dissents.

SHORT, J.

I respectfully dissent and would reverse the trial court's order granting the Department directed verdict on Hamilton's negligent supervision claim. While gross negligence is defined as the failure to exercise slight care, it is also "a relative term, and means the absence of care that is necessary under the circumstances." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 395, 520 S.E.2d 142, 153 (1999) (quoting *Hollins v. Richland Cnty. Sch. Dist. One,* 310 S.C. 486, 490, 427 S.E.2d 654, 656 (1993)). Viewing the evidence and its inferences in the light most favorable to Hamilton, I find there was evidence the Department was grossly negligent in supervising Aiken. Hamilton presented expert testimony that the Department was in gross violation of nationally accepted standards and procedures, and the Department failed to exercise even slight care for Hamilton's safety. As to the Department's policies permitting male guards to go wherever they wanted to among female inmates, the expert testified: "[I]t just combines a maximum of opportunity and temptation in an area where we've had problems for so many years. It's shocking that something like this could still exist." Hamilton also presented evidence by the retired Department commander that the circumstances caused concern, and the Department violated its own policies. Because I believe Hamilton's negligent supervision claim should have gone to the jury, I would reverse.