1791

Dr. Julian BUXTON and St. Paul Mercury Insurance Company, of whom St. Paul Mercury Insurance Company is, Respondent v. THOMPSON DENTAL COMPANY, Everette B. Crotts, D.D.S., P.A., and Pelton & Crane, of whom Everette B. Crotts, D.D.S., P.A., is, Appellant. Appeal of EVERETTE B. CROTTS, D.D.S., P.A.

(415 S.E. (2d) 844)

Court of Appeals

*Max G. Mahaffee*, Charleston, *for appellant.*

*R. Dennis Withers* and *Daniel A. Ragland*, Atlanta, Ga., and *Trent M. Kernodle*, Charleston, *for respondent.*

Heard Feb. 18, 1992.

Decided

CURETON, Judge:

This is an appeal from an order granting a new trial. We affirm the decision of the trial court.

The case arises from a fire in a medical office building. The building was owned by Roper Ventures. Drs. Julian Buxton and Everette B. Crotts were tenants in the building. The fire started in Dr. Crotts's office. It was alleged the fire emanated from an autoclave used by Dr. Crotts to sterilize medical instruments. St. Paul Mercury Insurance Company insured Roper Ventures, Dr. Buxton, and several other tenants. After the fire, St. Paul paid fire loss claims to its insureds and assumed subrogation rights to their potential causes of action.

Lawsuits for property damage were brought against Dr. Crotts, the seller of the autoclave, and its manufacturer. Dr. Crotts denied negligence in the operation of the autoclave and alleged Roper Ventures, the building owner, was contributorily negligent in failing to properly maintain the electrical wires and circuits in the building.

Two jury verdict forms were submitted. The first form related to St. Paul as subrogee for persons other than Roper Ventures and Dr. Buxton. The jury returned a verdict of $9,417 actual damages on that form against Dr. Crotts only. This verdict is not in issue on this appeal.

The second verdict form related to St. Paul as subrogee of Roper Ventures and Dr. Buxton.[1] The jury returned a verdict

---

[1] The record does not reveal why Roper Ventures and Dr. Buxton were joined together on the same verdict form.

for $851 actual damages on this form against Dr. Crotts only. This verdict equaled the amount of Dr. Buxton's stipulated damages. St. Paul had presented evidence of approximately $120,000 in damages to Roper Venture's interest in the building.

After the jury returned the verdicts, the trial judge asked if St. Paul had any motions. Counsel responded "[n]ot at this time, your honor." The trial judge then informed counsel that any post-trial motions needed to be made at that point. Counsel made a motion for judgment notwithstanding the verdict on the second verdict form. Essentially, he argued the verdicts were inconsistent because the jury found liability against Dr. Crotts and returned damage awards for all the tenants in the building but did not return a damage award for Roper Ventures, the owner of the building. The trial judge stated the verdict bothered him in regard to the amount and he would take the matter under advisement overnight.

The next morning the trial judge heard further argument on the motion. The judge stated during the hearing:

> What bothers me, counsel, is not that part of the argument at all. It is the efficacy of a judgment nov, and that is a direct nexus to directed verdict. In this state there is a direct connection between the motion for directed verdict and the action by the court on directed verdict motion, and the judgment nov motion. If the initial directed verdict motion cannot be granted, ordinarily judgment nov is not the proper motion or mechanism to be implemented in regard to deficiencies or defects in the jury verdict. That's what bothers me in terms of using judgment nov.

Following additional argument, the trial judge denied the motion for judgment nov. He asked again if there were any other motions and St. Paul's counsel responded no. The trial judge signed a judgment form indicating the jury verdicts were affirmed and all post-trial motions were denied. This judgment form was clocked in by the clerk of court shortly after 10:00 a.m.

At 2:26 p.m. on the same day, counsel for St. Paul appeared before the court to "move for leave of ten days to gather appropriate post-trial motions that we have not made to date."

Counsel for Dr. Crotts was present and opposed the motion. The trial judge declined to give an additional ten days but stated he would allow additional motions to be made at that time. For the first time counsel for St. Paul made motions for a new trial and new trial additur. The trial judge denied the motion for new trial additur. However, the judge granted the motion for a new trial as to the second verdict against Dr. Crotts on the ground the verdict of $851 was against the greater weight of the evidence and he set it aside under the thirteenth juror concept. Counsel for Dr. Crotts subsequently moved for reconsideration of the last order. The trial judge recognized the situation arose because of the failure of St. Paul's counsel to make a motion for new trial until after two opportunities. However, the trial judge denied the motion to reconsider stating difficulties in procedure sometimes do not result in justice in the case.

On appeal, Dr. Crotts asserts the trial judge erred in granting the motion for a new trial. Although he states his argument in somewhat different terms, he essentially argues the court erred in granting the new trial motion under the provisions of Rule 59, SCRCP.

South Carolina Rule of Civil Procedure 59 governs motions for new trial. Subparts (b) and (d) state in part:

> (b) *Time for Motion.* The motion for a new trial shall be made promptly after the jury is discharged, or in the discretion of the court not later than ten days thereafter. . . .
>
> *        *        *        *        *        *
>
> (d) *On Initiative of Court.* Not later than ten days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. . . .

The trial court did not grant the new trial on its own initiative in this case. Therefore, the issue is whether the motion was timely.

Our Rule 59(b) differs from the federal version in that the federal rule permits "a motion for a new trial [to] be served not later than ten days after the entry of the judgment." Fed. R. Civ. P. 59(b). We find no South Carolina case directly interpreting our rule in these circumstances. We think, however, a

fair interpretation of the rule would permit the trial court to entertain the motion during the the ten day period following entry of judgment. See 58 Am. Jur. (2d) *New Trial* Section 475 (1989) (where a court considers and rules on a motion for a new trial filed out of time for the motion as a matter of right, but prior to the expiration of the period during which the court may extend the time for such a motion, the court has, by implication, granted an extension of the time for filing the motion).

Under our interpretation of the rule, when St. Paul did not move immediately after trial for a new trial it lost the unconditional right to have the motion for new trial heard by the trial court. However, we find the failure of St. Paul to move immediately does not bar the trial court from exercising discretion to hear the motion for ten days after trial. During the ten day period the court's decision to hear the motion is discretionary based upon the court's assessment of the timing and reasons for the delay. In no event may the motion be made later than ten days after entry of judgment because this is the maximum time limit in which the court could order a new trial on its own initiative. We believe this interpretation conforms with Rule 1, SCRCP, which indicates the rules of civil procedure are to be construed to secure "the just, speedy, and inexpensive determination of every action." The trial judge recognized this concept when he stated procedural difficulties sometimes do not result in justice. We find no abuse of discretion in his decision to hear the motion since the time delay was less than one day. However, we stress counsel should be careful to comply with Rule 59(b) and not interpret this opinion as an open invitation to ignore its dictates.

We reject Dr. Crott's argument he was denied due process because he did not have notice of the new trial motion. Counsel for Dr. Crotts was present at the hearing. apparently, he was in the courthouse on another matter and the trial judge asked him to attend the hearing because he would not hear the matter *ex parte*. We have examined the record and find counsel for Dr. Crotts adequately presented his position at that time and on the motion to reconsider. Counsel has not indicated on appeal any argument he did not

make before the trial court. While the notice he received of the new trial motion hearing was short and informal we find no prejudice because the case had only been completed the day before the facts and circumstances of the trial were still fresh in the minds of the trial judge and the attorneys. As we see it, Dr. Crotts's attorney would have been in the same position had he been required to argue the new trial motion at the end of the trial. Absent a showing of prejudice, this court will not reverse based on an alleged trial error. *See Gold Kist Inc. v. Citizens & Southern Nat'l Bank of S.C.*, 286 S.C. 272, 333 S.E. (2d) 67 (Ct. App. 1985) (exclusion of evidence).

As to the substance of the motion, we find no abuse of discretion by the trial judge in granting a new trial under the thirteenth juror doctrine. "[This] doctrine is a vehicle by which the trial court may grant a new trial absolute when he finds that the evidence does not justify the verdict." *Folkens v. Hunt*, 300 S.C. 251, 254, 387 S.E. (2d) 265, 267 (1990). The appellate court will not disturb the decision of the trial court unless the decision is wholly unsupported by the evidence or the conclusion is controlled by an error of law. *Id.* The parties contend the jury could only have concluded the owner of the building was contributorily negligent and therefore the jury did not award damages to the owner but did award damages to the tenants. The trial judge expressed his concern about the evidence of contributory negligence at the directed verdict stage by stating there was a "paucity of evidence" and it was "skimpy." However, he correctly held he was not to assess the weight of the evidence at that point in the trial. *Sub Station II of Tennessee Inc. v. Oliver*, 414 S.E. (2d) 141 (S.C. 1992) (in considering the motion for directed verdict the trial judge should have considered only whether the evidence was susceptible of more than one reasonable inference). Under the thirteenth juror doctrine, the trial court may evaluate the evidence in a post-trial motion and determine if it justifies the verdict. We find no abuse of discretion.

Affirmed.

GARDNER and BELL, JJ., concur.