720 S.E.2d 53

# NORTH AMERICAN RESCUE PRODUCTS, INC., Appellant/Respondent,

v.

# P.J. RICHARDSON, Respondent/Appellant.

### No. 4909.

Court of Appeals of South Carolina.

Heard Sept. 12, 2011.

Decided Nov. 9, 2011.

Rehearing Denied Jan. 27, 2012.

126

Bernie Wellington Ellis, of Greenville and Robert L. Widener, of Columbia, for Appellant–Respondent.

C. Mitchell Brown, William C. Wood, Jr., and A. Mattison Bogan, all of Columbia and Rivers S. Stilwell, of Greenville, for Respondent–Appellant.

WILLIAMS, J.

In this cross-appeal, North American Rescue Products, Inc. (NARP) argues the circuit court erred in denying its motion for a directed verdict because no evidence existed that P.J. Richardson (Richardson) had an ownership interest in NARP or had a contractual right to purchase an ownership interest in NARP. Richardson cross-appeals, contending the circuit court erred in upholding the jury verdict ordering specific performance of the contract with a fair market valuation of the stock. We affirm.

## FACTS/PROCEDURAL HISTORY

On January 1, 2000, Bob Castellani (Castellani), on behalf of NARP, and Richardson, on behalf of Reeves Manufacturing, Inc. (Reeves), entered into an agreement (the 2000 Agreement), in which the parties agreed to pay each other commissions equal to twenty-five percent of the taxable income of their companies for cross-selling each other's respective products. Moreover, the parties agreed to issue twenty-five percent of their companies' respective capital stock to each other. After several years of each company operating under this agreement, it is undisputed the parties orally modified the 2000 Agreement by reducing the percentages of stock from twenty-five percent to seven and one-half percent at a meeting in Charleston, South Carolina (the Charleston Agreement). At trial, the parties testified the percentages were reduced, in part, because Richardson began negotiating with a third party for the sale of Reeves. Although the parties agree that the Charleston Agreement modified the percentages of stock from twenty-five percent to seven and one-half percent, the parties dispute the method of payment. Richardson contends the parties agreed that Richardson could acquire seven and one-half percent ownership interest in NARP in exchange for the monetary value of seven and one-half percent of the proceeds from the pending sale of Reeves. NARP argues there was never an agreement where it would accept a cash payment from Richardson in exchange for seven and one-half percent of NARP's stock, but insisted instead that the Charleston Agreement was a "like for like" exchange in each other's companies. In short, there is conflicting testimony as to the method of payment, and the Charleston Agreement is silent on this term.

Several months after the Charleston Agreement, Richardson's attorney drafted an "Agreement of Termination, Settlement, and Release" (the Termination Agreement). Richardson signed the Termination Agreement on behalf of Reeves on November 4, 2004, and Castellani signed the same agreement on behalf of NARP several days later. The Termination Agreement provided, in pertinent part:

1. *Termination of the 2000 Outline.* The parties agree that the 2000 Outline and any and all agreements, understandings, undertakings, or arrangements that in any way arose or may have arisen out of or relate in any manner to the 2000 Outline, are terminated.

2. *Settlement.* All claims and potential claims of any nature whatsoever that have been, could have been, or in the future could be asserted by the parties arising out of or relating in any manner to the 2000 Outline are hereby settled, compromised and released for and in consideration of the payment by [Reeves/Richardson] of the sum of $100.00 in lawful money of the United States of America to NARP and [Castellani].

3. *[Reeves and Richardson] Release.* NARP and [Castellani] hereby remise, release and forever discharge each [other], along with their respective directors, officers, stockholders, controlling persons, employees, agents, predecessors, successors and assigns, and agents, of and from all, and all manner of, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether in law or equity, which NARP and/or [Castellani] had, now have or which any personal representative, heir, predecessor, successor or assign of NARP and/or [Castellani] can, shall or may have against [Reeves or Richardson] or their respective directors, officers, stockholders, controlling persons, employees, agents, predecessors, successors and assigns, arising out of or relating to the 2000 Outline from and beginning of time to the date of this Settlement Agreement. It is specifically agreed and understood by the parties that the foregoing release is not intended to, and shall not, release any of

the parties from that *certain, separate Option Agreement dated [15 Dec], 2004* pursuant to which NARP and [Castellani] have granted [Richardson] an option to purchase 7.5% of the capital stock of NARP.

4. *NARP and [Castellani] Release.* [Reeves] and [Richardson] hereby remise, release and forever discharge each [other], along with their respective directors, officers, stockholders, controlling persons, employees, agents, predecessors, successors and assigns, and agents, of and from all, and all manner of, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether in law or equity, which [Reeves] and/or [Richardson] had, now have or which any personal representative, heir, predecessor, successor or assign of [Reeves] and/or [Richardson] can, shall or may have against [NARP or Castellani] or their respective directors, officers, stockholders, controlling persons, employees, agents, predecessors, successors and assigns, arising out of or relating to the 2000 Outline from and beginning of time to the date of this Settlement Agreement. It is specifically agreed and understood by the parties that the foregoing release is not intended to, and shall not, release any of the parties from that *certain, separate Option Agreement dated [15 Dec], 2004* pursuant to which NARP and [Castellani] have granted [Richardson] an option to purchase 7.5% of the capital stock of NARP.

5. *Entire Agreement.* This Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter contained herein, and *merges all prior discussions and agreements, both oral and written, between the parties.*

(emphasis added). To complicate matters further, the parties concede that no written option agreement dated December 15, 2004 existed at the time of the Termination Agreement. Moreover, the parties never entered into an option agreement dated December 15, 2004.

In January 2005, Richardson sold one-hundred percent of Reeves to a third party. The parties continued to discuss the terms of a potential agreement, including the exchange of several proposals, but NARP and Richardson never reached an agreement. On April 17, 2007, Richardson sent NARP a demand letter, advising NARP that Richardson "now desires to exercise his option to purchase" seven and one-half percent of NARP's stock "under the terms of the October 4, 2004 Option Agreement." [1] NARP responded to the demand letter by instituting this suit seeking a declaratory judgment on the matter. Richardson filed an answer and counterclaim, alleging breach of contract and demanded specific performance. Richardson also asserted relief under the doctrine of promissory estoppel. During the course of the litigation, Richardson filed multiple amended answers and counterclaims. In addition, the circuit court granted Richardson's motion to amend the pleadings to conform to the evidence presented at trial under Rule 15(b), SCRCP.

As a result of the conflicting testimony throughout the trial, the circuit court refused NARP's multiple requests for a directed verdict. Without objection, the circuit court submitted the case to the jury under a special verdict form to answer the fundamental question of whether Richardson had the right to acquire seven and one-half percent of NARP's stock and, if so, at what price. The jury returned a verdict finding Richardson was entitled to receive seven and one-half percent of NARP's stock, but Richardson should pay $2,936,300 for the stock. Following the verdict, the circuit court denied NARP's post-trial motions for directed verdict, new trial absolute, judgment notwithstanding the verdict, and for a new trial under the thirteenth juror doctrine. In addition, Richardson unsuccessfully moved for the circuit court to "reform the verdict" on the basis that the "number is something that [Richardson] can't see already in evidence." The circuit court confirmed the jury verdict in favor of Richardson and granted specific performance as found by the jury.

NARP appeals, contending the circuit court erred in denying its directed verdict motion on all contract claims and on

---

1. Richardson conceded at trial that the option agreement dated October 4, 2004 was never finally agreed to by both parties.

promissory estoppel. Richardson cross-appeals, arguing the judgment amount for specific performance should be $415,988, not $2,936,300 as provided in the jury verdict.

## STANDARD OF REVIEW

When considering a directed verdict motion, the circuit court should view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999)). "If more than one reasonable inference can be drawn ... the case should be submitted to the jury." *Chaney v. Burgess*, 246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965) (citing *Mahon v. Spartanburg Cnty.*, 205 S.C. 441, 449, 32 S.E.2d 368, 371 (1944)). The circuit court should be "concerned only with the existence or nonexistence of evidence," not its credibility or weight. *Jones v. Gen. Elec. Co.*, 331 S.C. 351, 356, 503 S.E.2d 173, 176 (1998) (citing *Garrett v. Locke*, 309 S.C. 94, 99, 419 S.E.2d 842, 845 (Ct.App.1992)). An appellate court will only reverse the circuit court's ruling when no evidence supports the ruling or when the ruling is controlled by an error of law. *Steinke*, 336 S.C. at 386, 520 S.E.2d at 148.

An action for specific performance is one in equity. *Campbell v. Carr*, 361 S.C. 258, 262, 603 S.E.2d 625, 627 (Ct.App.2004). "In reviewing a proceeding in equity, this court may find facts based on its own view of the preponderance of the evidence." *Greer v. Spartanburg Technical Coll.*, 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct.App.1999). "This broad scope of review does not require this court to ignore the findings below when the circuit court was in a better position to evaluate the credibility of the witnesses." *Id.* "Moreover, the appellant is not relieved of his burden of convincing the appellate court the [circuit court] committed error in its findings." *Pinckney v. Warren*, 344 S.C. 382, 387–88, 544 S.E.2d 620, 623 (2001).

Additionally, "[a] legal question in an equity case receives review as in law." *Sloan v. Greenville Cnty.*, 356 S.C. 531, 546, 590 S.E.2d 338, 346 (Ct.App.2003). Because questions of law may be decided with no particular deference to

the circuit court, this court may correct errors of law in both legal and equitable actions. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000) (citing S.C.Code Ann. § 14–8–200 (Supp.1998)).

## LAW/ANALYSIS

### I. NARP's Appeal

■ NARP argues the circuit court erred in denying its directed verdict motion on Richardson's contract and promissory estoppel claims on the grounds that the Termination Agreement unambiguously and unequivocally terminated all rights and promises under the 2000 agreement. We disagree.

■ In ruling on motions for directed verdict, "the [circuit] court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions whe[n] either the evidence yields more than one inference or its inference is in doubt." *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). This court will reverse the circuit court's rulings on directed verdict motions only when there is no evidence to support the rulings or when the rulings are controlled by an error of law. *See Hinkle v. Nat'l Cas. Ins. Co.*, 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003) (internal citation omitted). After viewing the evidence in a light most favorable to Richardson, as our standard of review requires, we find the circuit court properly denied NARP's directed verdict motion.

NARP maintains the merger clause of the Termination Agreement between the parties ended any and all rights that Richardson had or may have to own or purchase any NARP stock. However, considered in the light most favorable to Richardson, there is evidence from which the jury could find the document containing the termination provision was only a single portion of an overarching, three-step agreement between the parties. At trial, Richardson presented evidence that a tripartite agreement was never fully executed and, as a result, the parties continued to be bound by the Charleston Agreement. Richardson and his wife both testified the Termination Agreement was only one part of a tripartite agreement,

which also included Richardson's right to purchase seven and one-half percent of NARP's stock in exchange for a charitable donation to Dobson Ministries in the amount equivalent to seven and one-half percent of the sale of Reeves. In addition, Richardson's former attorney, Rod Manning (Manning), offered similar testimony consistent with the position that the Termination Agreement was part of a larger, tripartite agreement.

In denying NARP's multiple motions for directed verdict, the circuit court properly considered the existence of this conflicting evidence. *See Garrett,* 309 S.C. at 99, 419 S.E.2d at 845 (stating that the circuit court should not be concerned with the credibility or weight of evidence, only its existence). The circuit court stated,

Y'all might be certain that you entered into that November 8, 2004 termination agreement but I don't think the evidence shows that. I don't know if you did or not. Number one. And the terms of the contract are absolutely ambigious [sic]. Read as a whole, it borders on being completely ununderstandable. So all these matters barring some change from the evidence presented by the defense and all these issues are going to go to the jury.

In denying NARP's motion for a directed verdict again at the close of the evidence, the circuit court stated "the testimony is conflicting" and NARP's position "certainly is a possible conclusion that the jury can come to[, b]ut there is more than one."

There may be a basis for the fact-finder to reject the testimony of Richardson, his wife, and Manning, but that credibility determination lies with the jury, not the court, at the directed verdict stage. *See Sabb,* 350 S.C. at 427, 567 S.E.2d at 236 (noting a circuit court must deny a directed verdict motion when the evidence yields more than one inference or its inference is in doubt). We hold the evidence under the proper standard of review presented a question of fact as to whether a contract existed between the parties. Accordingly, we affirm the circuit court's denial of NARP's directed verdict motions. *Id.* (stating an appellate court will reverse the circuit court's decision to deny a directed verdict motion only when no evidence supports the ruling below).

## II. Richardson's Cross–Appeal

### A. Standing

As an initial matter, NARP contends Richardson does not have standing to appeal because Richardson is not an aggrieved party and, therefore, does not have the right to appeal. *See* Rule 201, SCACR; S.C.Code Ann. § 18–1–30 (1976). We find this position without merit.

Rule 201(b) limits the ability to appeal to "[o]nly a party aggrieved by an order, judgment ... or decision...." Rule 201(b), SCACR. This court has previously explained that under Rule 201(b), "[t]he word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right, or the imposition on a party of a burden or obligation." *Beaufort Realty Co. v. Beaufort Cnty.*, 346 S.C. 298, 301, 551 S.E.2d 588, 589 (Ct.App.2001). "A party is aggrieved by a judgment or decree when it operates on his or her rights of property or bears directly on his or her interest." *Id.*

In the instant case, Richardson contends he entered into a contract requiring him to pay seven and one-half percent of the sale of Reeves in exchange for seven and one-half percent of stock in NARP. The jury's verdict granted specific performance in favor of Richardson, but the judgment required Richardson pay $2,936,000, instead of $415,988, which is the equivalent to seven and one-half percent of the proceeds from the sale of Reeves. The law recognizes that despite having been a "winning" party below, a party can still be aggrieved by a judgment of the court. *See Cobb v. Benjamin*, 325 S.C. 573, 580, 482 S.E.2d 589, 592–93 (Ct.App.1997) (holding party was aggrieved and appeal was proper despite judgment essentially granting relief the party requested); *Cisson v. McWhorter*, 255 S.C. 174, 178, 177 S.E.2d 603, 605 (1970) (stating an aggrieved party is defined as a person who is aggrieved by a judgment or decree "when it operates on his rights of property or bears directly upon his interest, the word aggrieved referring to a substantial grievance, a denial of some personal or property right or the imposition on a party of a burden or obligation"). Accordingly, we find Richardson is an aggrieved party in a legal sense and, therefore, has standing to appeal.

## B. Preservation

█ NARP also asserts Richardson's argument on cross-appeal is not preserved for our review because Richardson failed to challenge the circuit court's ruling at trial and does not specifically raise the issue on appeal. We disagree.

It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the circuit court to be preserved. *See generally Holy Loch Distribs., Inc. v. Hitchcock*, 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000); *Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000). Moreover, our courts have adhered to the rule that when an issue has not been ruled upon by the circuit court or raised in a post-trial motion, such issue may not be considered on appeal. *See SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 499, 392 S.E.2d 789, 793 (1990) (finding an issue never ruled on by the circuit court or raised in an appropriate post-trial motion is not preserved for review).

After the jury granted specific performance in favor of Richardson and found that he was entitled to receive seven and one-half percent of NARP's stock upon paying $2,936,300, Richardson made the following motion:

> [W]e'd ask for JNOV based on the 13th jury doctrine for the Court to reform the verdict in that the basis for the number [i.e. $2,936,300] is something that I can't see already in evidence.[2]

It is evident that Richardson made a post-trial motion objecting to the amount the jury determined NARP was entitled to receive in exchange for seven and one-half percent of its stock. In response, the circuit court denied Richardson's post-trial motion stating, "there is sufficient evidence in the record

---

2. Although Richardson's counsel has confused the language of the post-trial motion he wished to employ, as we interpret the record, it is entirely clear to this court that Richardson's counsel moved for a new trial nisi remittitur based upon counsel's desire to "reform the verdict" and his statement that the jury's "number is something that [he] can't see already in evidence." Counsel's statements, coupled with the circuit court's ruling, support this interpretation. *See James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006) ("A motion for a new trial nisi remittitur asks the [circuit] court to reduce the verdict because the [jury's] verdict is merely excessive."). Accordingly, we treat Richardson's post-trial motion as a new trial nisi remittitur.

which would support the jury's verdicts in the amount set forth based upon the evidence presented." As a result, this issue was raised and ruled upon by the circuit court. Richardson properly appeals this issue, arguing the circuit court's grant of specific performance should be for $415,988, the contract amount Richardson alleges was agreed to by the parties in the Charleston Agreement. Accordingly, we find Richardson properly preserved and raised this issue on appeal.

## C. Specific Performance

In his cross-appeal, Richardson contends the circuit court properly entered a judgment of specific performance based upon the jury's answers to the interrogatories on the special verdict form, but erred in determining the amount Richardson must pay for seven and one-half percent of NARP's stock. We disagree.

Although an action for specific performance is one in equity, the record indicates the parties and the court treated this case as one in law, submitting issues of fact to a jury. *See Horn v. Davis Elec. Constructors, Inc.*, 302 S.C. 484, 487, 395 S.E.2d 724, 725–26 (Ct.App.1990) (holding parties implicitly agreed to trial by consent in equity action for retaliatory discharge when parties and court treated case as law case with submission of issues of fact to jury and court did not consider jury as advisory only). Moreover, the record conclusively demonstrates the circuit court intended that the jury would decide all questions of fact in this case, including the price for the stock, as evidenced by the special verdict form submitted to the jury without objection.[3] Accordingly, the circuit court

---

**3.** The circuit court submitted the case to the jury under a special verdict form that asked numerous contract questions, which the jury answered as follows:

    1. Did [NARP] and [Richardson] give each other the right to acquire 7.5% of each other's stock?

    a. YES.

    2. Do you find that [NARP] agreed to let [Richardson] acquire 7.5% of [NARP's] stock in exchange for money rather than the issuance of 7.5% of capital stock?

    a. YES.

    3. Can both parties perform under the 2000 Agreement as amended in Charleston?

had the responsibility to enter an order consistent with the jury's findings if there was any evidence to support such findings. *See Johnstone v. Matthews*, 183 S.C. 360, 366, 191 S.E. 223, 225 (1937) (holding when issues of fact in equity cases are tried to a jury and findings of fact are made, if there is any evidence to support them, the findings are conclusive of the issues submitted).

Here, the circuit court did not err in granting specific performance in the amount the jury determined because it is an appropriate remedy under the evidence presented in this case. At trial, Richardson presented the testimony of Mike Melinger (Melinger), an expert witness qualified in the field of business evaluations, to detail the fair market value of NARP's stock. Over NARP's objections, the circuit court ruled the expert witness could testify and informed the parties that the jury would have to decide the amount Richardson would have to pay for the stock if Richardson was entitled to it. Melinger testified he applied the industry standard lack of control discount and a lack of marketability discount to the two estimated values of $150,000,000 and $80,000,000 placed on NARP's company. Melinger further testified that "[a]t 150 million dollars, the [seven and one-half percent] interest would be worth $5,750,000. At 80 million dollars, [seven and one-half percent] interest would be worth $3,000,120."

Once in deliberations, the jury submitted a question to the court concerning number eight on the verdict form. The jury inquired: "If we [find Richardson is entitled to NARP's stock], will P.J. Richardson be *required* to purchase 7.5% of NARP common stock at current market value[?]" (emphasis in origi-

---

a. YES.
4. Did the parties [NARP and Richardson] enter into a contract, that is the November 2004 [Termination Agreement]?
a. YES.
5. If the [Termination Agreement] is a contract, does it end both parties' rights to acquire 7.5% of the capital stock of each other?
a. NO.
  . . .
8. Is [Richardson] entitled to receive 7.5% of the outstanding capital stock of [NARP]?
a. YES.
b. [If so], what should [Richardson] pay to [NARP] for 7.5% of the common capital stock?
i. $2,936,300.

nal). The circuit court advised the jury that it "must assign some value for the stock if" the jury answered question number eight in the affirmative. Utilizing the fair market value of $80,000,000, the jury's determination that Richardson must pay $2,936,300 for seven and one-half percent of NARP's stock is within the range of the expert witness' testimony. *See Buzhardt v. Cromer,* 272 S.C. 159, 163, 249 S.E.2d 898, 900 (1978) (holding when the amount of the verdict falls within the range of amounts testified to, the verdict cannot be disturbed on the ground of excessiveness). Furthermore, in denying Richardson's post-trial motion, the circuit court stated:

> I do find that there is sufficient evidence in the record which would support the jury's verdict in the amount set forth based upon the evidence presented [including] the different dates as far as the evaluation over a period of years that the jury could have used in this particular matter to arrive at that verdict. And I find it's well within their discretion and the facts and evidence in this case.

As a result, we find ample evidence in the record to support the jury's verdict. Moreover, Richardson has not presented, and we do not find, any compelling reasons to invade the jury's province and alter the amount in the verdict. *See Bailey v. Peacock,* 318 S.C. 13, 14, 455 S.E.2d 690, 691 (1995) (stating compelling reasons must be given to justify invading the jury's province).

In granting Richardson seven and one-half percent of NARP's stock in exchange for $2,936,300, the jury's verdict is supported by the evidence in the record. *See Johnstone,* 183 S.C. at 366, 191 S.E. at 225 (holding when issues of fact in equity cases are tried to a jury and findings of fact are made, if there is any evidence to support them, the findings are conclusive of the issues submitted). Accordingly, we affirm the circuit court's entry of specific performance and hold Richardson must pay $2,936,300 for seven and one-half percent of NARP's stock.

## CONCLUSION

Accordingly, the circuit court's order is

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.