**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Hazel Jeisel Rivera, Respondent,

v.

Warren Jared Newton, Newton's Farm, J&J Logging, Inc., and Edgar Rivera, Appellants.

Appellate Case No. 2010-168831

Appeal From Georgetown County
Benjamin H. Culbertson, Circuit Court Judge

Opinion No. 2012-UP-695
Heard September 11, 2012 – Filed November 28, 2012

**AFFIRMED**

J. Dwight Hudson, of Hudson Law Offices, of Myrtle Beach, for Appellants Warren Jared Newton, Newton's Farm, and J&J Logging, Inc.

Brandon A. Smith, of Turner Padget Graham & Laney, P.A., of Florence, for Appellant Edgar Rivera.

Lawrence Sidney Connor, IV, of Kelaher, Connell & Connor, P.C., of Surfside Beach, for Respondent.

**SHORT, J.:** Warren Jared Newton, Newton's Farm, and J & J Logging, Inc. (collectively, the Newton defendants) and Edgar Rivera appeal the trial court's grant of Jeisel Rivera's new trial motion after the jury returned a verdict in favor of all defendants in this automobile accident case. We affirm.

## FACTS

Jeisel and Edgar are siblings. On the night of the accident, Edgar received a telephone call indicating their father had been mugged and was injured. Edgar tried to conceal the call from his sister to avoid upsetting her, but Jeisel overheard and insisted on accompanying Edgar to check on their father. Edgar was eighteen years old, but was not a licensed driver. They got into a car owned by an acquaintance and were followed by a second car driven by a friend, Miguel Fernandez.

At the same time the events were unfolding at the Rivera residence, Warren Newton and his brother were preparing to move a heavy piece of logging equipment across a T-intersection at Pennyroyal Road in Georgetown County, South Carolina. Warren waited ten minutes for traffic to clear. Using a tractor trailer, he pulled straight across, blocking both lanes of the road and beginning to make a three-point turn. He was backing up to straighten the vehicle as Edgar and his companions approached. Edgar did not see the trailer in time to stop, and a collision occurred. Jeisel was ejected from the vehicle and suffered significant injuries.

Jeisel sued the Newton defendants and her brother. At trial, Jeisel testified she insisted that her brother take her to check on their father, and she did not think he could have done anything to avoid the accident. She also testified she was trying to reach her mother on her cell phone while they were driving, and she did not see the truck in time to warn Edgar. Edgar testified he may have been going slightly over the fifty-five miles-per-hour speed limit, and he did not see any warning signs about trucks entering the road as he approached the tractor trailer. He also testified he was familiar with this road and had driven on it before.

Thomas Onions testified as an expert in the plaintiff's case. In his opinion, the headlights of the tractor trailer made it appear as though a car was coming down the road. He testified the lights would have temporarily blinded Edgar, and he would not have been able to see the trailer in time to avoid the accident. Onions stated the Newton brothers could have set up flares or reflective triangles to warn oncoming traffic of their presence, and they created a very dangerous condition in making this maneuver at night on a poorly lit road. He also stated Edgar may have been traveling faster than fifty-five miles per hour, but it was impossible to tell from the information provided. At the conclusion of Onions' testimony, the Newton defendants' attorney read into the record the summation portion of Onions' report, which stated:

> It's my opinion that the careless and negligent manner in which Warren, Warren Newton, undertook to move his truck and trailer across the roadway on the night of the accident was the most significant causal factor to the crash event. It is further my opinion that Edgar Rivera also contributed to this accident by failing to slow his vehicle appropriately and continuing to drive into an area visually obstructed by nighttime glare and poor lighting.

Trooper William Surratt responded to the accident scene and testified that according to his diagram of the scene, the tractor trailer's headlights would have been shining in the direction of oncoming traffic. He also stated he did not see warning signs on the road approaching the accident, and no skid marks were at the scene. Surratt testified Edgar did not have his driver's license at the scene.

At the conclusion of Jeisel's case, Edgar moved for a directed verdict based on Jeisel's alleged failure to produce any evidence of his negligence. The court concluded Edgar had testified he was speeding, and he did not see the tractor trailer or warning signs, which could have indicated he had failed to keep a proper lookout. The trial court denied the motion.

Warren Newton testified the tractor trailer had reflective tape on the side and between the tractor and the trailer, there were more than fifty lights, six of which were blinking at the time of the accident. He stated the truck headlights were angled away from the road, facing into the woods, when Edgar approached. He indicated he saw the cars approaching and estimated their speed at sixty-five to

seventy miles per hour. Warren testified he flashed his lights, but the cars never slowed down. He further stated there were reflective signs approaching the intersection indicating trucks entered the highway. Warren acknowledged he and his brother did not use flashlights or reflective triangles that were available to them to signal oncoming traffic, and they could have waited until morning to move the truck, an activity he estimated caused them to block the roadway for approximately twenty-five to thirty seconds. Joel Newton testified he was following the tractor trailer in a pick-up truck and had his headlights and emergency flashers on. He testified the tractor trailer's headlights were pointing toward the woods.

Timothy Ward, a witness who lived nearby and approached the scene soon after the accident happened, testified the headlights of the truck were pointed into the woods at about a forty-five-degree angle to the road. He further testified a couple of cars approached from both directions, but they were able to stop and turn around. Ward did not remember seeing lights on the trailer.

Charles Dickinson, an expert for the Newton defendants, opined that Edgar should have seen the tractor trailer if he had been paying attention and not speeding at the time of the accident. According to Dickinson, there was sufficient time, based on his information and his attempt to recreate the conditions the night the accident occurred, for Edgar to see the truck's headlights, readjust his vision, and stop the car before hitting the trailer.

The parties made several motions before the jury was charged. Jeisel moved to strike the Newton defendants' contributory negligence defense. The trial court granted this motion. The trial court also granted Jeisel's request not to charge the jury with unavoidable accident. However, over Jeisel's objection, the trial court allowed the verdict form to go to the jury with the option to find in favor of both defendants. The trial court found that even though Jeisel was not contributorily negligent and the accident was not unavoidable, the jury could find she did not meet her burden of proof in proving one or both defendants were negligent.

The jury deliberated and returned a verdict in favor of the defendants. The trial court granted Jeisel's new trial motion, stating, "The only reasonable inference from the evidence presented at the trial of this case is that one or more of the defendants were at fault in causing the accident that injured the plaintiff." The court further concluded: "[N]o evidence was presented that showed the plaintiff at fault. Therefore, I find and conclude that the court erred in not granting the

plaintiff's motion for directed verdict as to liability and in instructing the jury that it could return a verdict in favor of all defendants. *See Howard v. Roberson*, 376 S.C. 143, 654 S.E.2d 877 [(Ct. App. 2007)]." Edgar and the Newton defendants appealed.

**LAW/ANALYSIS**

## I. Jeisel's Alleged Negligence

The Newton defendants argue numerous alleged errors regarding Jeisel's own negligence, which we combine to address. The Newton defendants argue the trial court erred in the following: (1) granting a new trial because the jury could have imputed Edgar's negligence to Jeisel by virtue of her being the older and only licensed occupant of the vehicle; (2) excluding evidence of Jeisel's failure to keep a proper lookout; (3) failing to charge the jury that a passenger has a duty to exercise due care for his or her own safety; and (4) granting a new trial when Jeisel's own negligence contributed to her injuries. We disagree.

The admission or exclusion of evidence is within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of discretion. *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005). The trial court is required to charge only principles of law that apply to the issues raised in the pleadings and developed by the evidence at trial. *Clark v. Cantrell,* 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000). "Furthermore, the trial court is required to charge only the current and correct law of South Carolina." *Id.* (citation omitted).

The Newton defendants contend numerous facts could have led the jury to infer Jeisel was negligent. For instance, the Newton defendants argue a reasonable inference arises that Jeisel was not wearing her seatbelt because she was ejected through the windshield of the car. Also, they argue an inference of her negligence could have been made based on her decision to ride with Edgar, an unlicensed driver. Additionally, the fact that Jeisel was trying to reach her mother on her cell phone could have inferred Jeisel was negligent as a passenger. Finally, the Newton defendants argue the jury could have imputed Edgar's negligence to Jeisel.

First, the Newton defendants failed to preserve their argument that the trial court erred in granting a new trial because the jury could have imputed Edgar's negligence to Jeisel by failing to raise this issue to the trial court. *See Herron v.*

*Century BMW*, 395 S.C. 461, 466, 719 S.E.2d 640, 642 (2011) (stating an appellant's argument must be sufficiently clear to allow the trial court to understand it and rule upon it).

As to the remainder of their arguments regarding Jeisel's own negligence, we find no error. First, no evidence was presented of Jeisel's negligence. Although the issue of a plaintiff's own comparative negligence is ordinarily a question of fact for the jury, where the evidence presented yields only one conclusion concerning liability, the trial court may determine the issue as a matter of law. *Bloom v. Ravoira*, 339 S.C. 417, 422, 529 S.E.2d 710, 713 (2000) (explaining comparative negligence is ordinarily a question of fact for the jury); *Fairchild v. S.C. Dep't of Transp.*, 385 S.C. 344, 353, 683 S.E.2d 818, 823 (Ct. App. 2009) ("When evidence presented at trial yields only one conclusion concerning liability, the trial court may properly grant a motion for directed verdict."), *aff'd*, 398 S.C. 90, 727 S.E.2d 407 (2012).

As to the inferential evidence of Jeisel's failure to wear a seatbelt, a violation of the mandatory seatbelt law "is not negligence per se or contributory negligence, and is not admissible as evidence in a civil action." S.C. Code Ann. § 56-5-6540(C) (Supp. 2011); *see Clark v. Cantrell*, 332 S.C. 433, 451, 504 S.E.2d 605, 614-15 (Ct. App. 1998) (holding indirect evidence that plaintiff/decedent was not wearing a seatbelt was not inadmissible, but the court correctly instructed the jury it should not consider the seatbelt evidence in its deliberations), *aff'd as modified by* 339 S.C. 369, 529 S.E.2d 528 (2000); *Keaton v. Pearson*, 292 S.C. 579, 580, 358 S.E.2d 141, 141 (1987) (holding that in the absence of an affirmative statutory duty, the failure to use a seat belt does not constitute contributory negligence). Further, we find Jeisel's actions as a passenger are not, as a matter of law, sufficient to reverse the trial court's grant of a new trial. *See Thompson v. Michael*, 315 S.C. at 271, 433 S.E.2d at 854 ("In the absence of any fact or circumstance indicating the driver is *incompetent or careless*, an occupant of a vehicle is not required to anticipate negligence on the part of the driver."); *Funderburk v. Powell*, 181 S.C. 412, 421, 187 S.E. 742, 749 (1936) ("The standard of care to be observed and exercised by the occupant is of course ordinary care under the circumstances. It cannot be said, however, that in every case and under all circumstances it is the duty of an occupant of a motor vehicle to use his senses in order to discover approaching vehicles or other dangers, or that his failure to do so would be negligence.").

After a review of the record, we find no error in the trial court's rulings regarding Jeisel's own negligence.

## II.   Denial of Directed Verdict in Favor of Edgar

Edgar argues the trial court erred in denying his motion for directed verdict.  We disagree.  The evidence suggested that either Edgar, the Newton defendants, or both were negligent.  Edgar admitted he was speeding, and the evidence illustrates he was potentially distracted by concern about his father's well-being.  Although Jeisel testified she did not know how her brother could have avoided the accident, her expert indicated Edgar's speed and failure to slow down when confronted with glare contributed to the accident.  Finally, the Newton defendants' expert testified the accident was due to Edgar's speed and failure to keep a proper lookout, and Warren Newton testified he estimated Edgar's speed between sixty-five and seventy miles per hour.

In considering a motion for directed verdict, the trial court is required to "view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions and to deny the motions where either the evidence yields more than one inference or its inference is in doubt." *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429-30, 445 S.E.2d 439, 440 (1994) (citation omitted).  The trial court should not be concerned with the credibility or weight of evidence, only with its existence or nonexistence. *N. Am. Rescue Prods., Inc. v. Richardson*, 396 S.C. 124, 131, 720 S.E.2d 53, 57 (Ct. App. 2011).  An appellate court reviewing a trial judge's denial of a motion for directed verdict will reverse only when no evidence exists to support the ruling or when the ruling is governed by an error of law. *Austin v. Stokes–Craven Holding Corp.,* 387 S.C. 22, 42, 691 S.E.2d 135, 145 (2010).

In this case, there was evidence Edgar was speeding.  Viewing the evidence in the light most favorable to Jeisel, we find no error in the trial court's denial of Edgar's motion for a directed verdict.

## III.   Grant of Jeisel's New Trial Motion

Edgar and the Newton defendants argue the trial court erred in granting Jeisel's motion for new trial.  The Newton defendants also argue the trial court erred in

finding the only reasonable inference to be drawn from the evidence was that one or more of the defendants were at fault. The Newton defendants finally argue Jeisel failed to meet her burden of proof in establishing any of the defendants were negligent. We disagree.

We previously discussed the evidence of Edgar's negligence in affirming the trial court's denial of his motion for directed verdict. We also find there was evidence the Newton defendants were negligent. The Newton defendants had to wait ten minutes before traffic cleared before maneuvering the tractor trailer diagonally across the road, completely blocking both lanes and preventing traffic from proceeding in either lane. Furthermore, Jeisel's expert testified the Newton defendants caused a dangerous condition by moving the equipment late at night with the knowledge that their presence in the intersection would be approximately twenty-five to thirty seconds. They did not use a flagman or flashlight to warn oncoming traffic or put out reflective triangles, which were available to them. We find no error by the trial court in granting the motion for a new trial.

Edgar additionally argues the trial court erred in granting the new trial because the court based its decision on its failure to grant Jeisel's directed verdict motion as to liability. He contends the new trial motion was made on the law, not the facts as contemplated by the thirteenth juror doctrine. We need not determine if the court erred in concluding it should have granted Jeisel's motion for directed verdict as to liability, because we find it was based on the facts, and it was within the trial court's discretion.

"The grant or denial of a new trial motion rests within the trial court's discretion, and its decision will not be disturbed on appeal unless the court's findings are wholly unsupported by the evidence or its conclusions are controlled by error of law." *Winters v. Fiddie*, 394 S.C. 629, 638, 716 S.E.2d 316, 321 (Ct. App. 2011) (citations omitted). "In South Carolina, a trial judge may grant a new trial following a jury verdict under the Thirteenth Juror doctrine. The doctrine entitles the judge to sit, in essence, as the thirteenth juror when he finds the evidence does not justify the verdict, and then to grant a new trial based solely upon the facts." *Lane v. Gilbert Constr. Co.*, 383 S.C. 590, 597, 681 S.E.2d 879, 883 (2009) (internal quotation marks and citations omitted). This court's review of a trial court's grant of a new trial is limited to consideration of whether evidence exists to support the trial court's order. *Id.* As long as there is conflicting evidence, the trial court's grant of a new trial will not be disturbed. *Id.* at 597-98, 681 S.E.2d at 883.

Under the thirteenth juror doctrine, the trial court may grant a new trial based on its view of the facts. *Folkens v. Hunt*, 300 S.C. 251, 254, 387 S.E.2d 265, 267 (1990). Our supreme court discussed the thirteenth juror doctrine in *Folkens*:

> This Court has had an opportunity to reconsider the thirteenth juror doctrine on several occasions. Each time we have refused to abolish the doctrine. We have also refused to require trial judges to explain the reasons for the ruling. The thirteenth juror doctrine is a vehicle by which the trial court may grant a new trial absolute when he finds that the evidence does not justify the verdict. This ruling has also been termed granting a new trial upon the facts. The effect is the same as if the jury failed to reach a verdict. The judge as the thirteenth juror "hangs" the jury. When a jury fails to reach a verdict, a new trial is ordered. Neither judge nor the jury is required to give reasons for this outcome. Similarly, because the result of the "thirteenth juror" vote by the judge is a new trial rather than an adjustment to the verdict, no purpose would be served by requiring the trial judge to make factual findings.

*Id.* (internal citation omitted).

At this stage of a trial, the court may weigh the evidence even though it is not permitted to do so in considering a directed verdict motion. *See Buxton v. Thompson Dental Co.*, 307 S.C. 523, 528, 415 S.E.2d 844, 848 (Ct. App. 1992) (affirming the trial court's grant of a new trial motion after its denial of a directed verdict motion), *overruled on other grounds by Boone v. Goodwin*, 314 S.C. 374, 444 S.E.2d 524 (1994). "The granting of a new trial upon the facts is not the equivalent of granting a directed verdict." *McEntire v. Mooregard Exterminating Servs., Inc.*, 353 S.C. 629, 632, 578 S.E.2d 746, 748 (Ct. App. 2003) (citation omitted). We find the trial court's refusal to grant a directed verdict was not necessarily inconsistent with the grant of a new trial. *See RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 334, __ S.E.2d __ (2012) ("The question of whether the evidence is legally sufficient to sustain a verdict, a question of law, is distinguishable from the question of whether a fair preponderance of the

evidence supports a verdict, which is a matter involving the exercise of discretion.").

We find the trial court's grant of a new trial *was* based on its view of the facts, evidenced in its finding that the only reasonable inference from the evidence was "that one or more of the defendants were at fault in causing the accident that injured the plaintiff." The court also found no evidence showed Jeisel was at fault. Furthermore, we need not address whether the trial court erred in finding it should have granted Jeisel's motion for a directed verdict because we find the trial court granted the new trial on the facts, and its decision was not wholly unsupported by the evidence. *See Trivelas v. S.C. Dep't of Transp.*, 357 S.C. 545, 552, 593 S.E.2d 504, 508 (Ct. App. 2004) (affirming the grant of a new trial under the thirteenth juror doctrine after viewing the trial court's order as a whole, coupled with the court's statements); *Burton v. York Cnty. Sheriff's Dep't*, 358 S.C. 339, 355-56, 594 S.E.2d 888, 897 (Ct. App. 2004) (reading the trial court's order as a whole in finding the reasons for the court's order were "amply clear"); *Youmans ex rel. Elmore v. S.C. Dep't of Transp.*, 380 S.C. 263, 272, 670 S.E.2d 1, 5 (Ct. App. 2008) ("When an order granting a new trial is before this Court, our review is limited to the consideration of whether evidence exists to support the trial court's order.").

We likewise find no error in the trial court's citation to *Howard v. Roberson*, 376 S.C. 143, 147-48, 654 S.E.2d 877, 879 (Ct. App. 2007), in which this court affirmed the trial court's grant of a motion for directed verdict in favor of a passenger against two drivers. This court stated: "The evidence presented at trial yielded only one conclusion—that the negligence of at least one driver, if not both, resulted in the accident causing [the plaintiff's] injuries." *Id.* at 151, 656 S.E.2d at 881. In this case, we need not determine if the trial court erred in finding it should have granted Jeisel directed verdict because the learned judge did not err in granting a new trial based on the facts. Therefore, we find no prejudicial error in its citation to *Howard*.

Finally, without citation to legal authority in his initial brief, Edgar argues there was sufficient evidence of the negligence of an unnamed party such as the State of South Carolina or Georgetown County to support the jury's verdict. This issue is deemed abandoned. *See State v. Howard,* 384 S.C. 212, 217, 682 S.E.2d 42, 45 (Ct. App. 2009) (finding an issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority); *see*

*also McClurg v. Deaton*, 395 S.C. 85, 87 n.2, 716 S.E.2d 887, 888 n.2 (2011) (stating an issue may not be raised for the first time in a reply brief).

**CONCLUSION**

For the foregoing reasons, the trial court's order granting a new trial is

**AFFIRMED.**

**LOCKEMY, J., concurs.**

**KONDUROS, J., concurs in part and dissents in part.**


**KONDUROS, J.**, concurring in part and dissenting in part: I agree with the majority's analysis in sections I and II. However, I must respectfully dissent as to the trial court's grant of Jiesel's new trial motion. The trial court granted a new trial based on its failure to direct a verdict in Jiesel's favor as to the liability of one or both defendants. Because this was the basis of the order, as evidenced by its language and reliance on *Howard v. Roberson*, 376 S.C. 143, 654 S.E.2d 877 (Ct. App. 2007), I believe the analysis as to whether the denial of directed verdict was appropriate is essential to the new trial question.

On that point, I believe the trial court correctly denied Jeisel's motion, because the jury could have found she failed to meet her burden of proof as to the negligence of both defendants. Jeisel testified she did not believe Edgar could have done anything to avoid the accident, and the parties presented conflicting testimony regarding the direction the tractor-trailer's headlights were shining and how well the truck and area were lit the night of the accident. *See Moore v. Levitre*, 294 S.C. 453, 453-54, 365 S.E.2d 730, 730 (1988) (stating in deciding a directed verdict motion, the trial court must view the evidence and its inferences in the light most favorable to the opposing party and should deny the motion if the evidence yields more than one inference or if its inferences are in doubt).

Because I believe the trial court's grant of a new trial was based on an erroneous change of heart with respect to the directed verdict motion, I would reverse the trial court's grant of a new trial and reinstate the jury's verdict.